**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

**UNITED STATES OF AMERICA,**

       Plaintiff,                              **REPORT AND RECOMMENDATION**

    -against-                                     09-CR-216 (JG) (ALC)

**ISSAC OVID,**

**AARON RIDDLE,**

**JOSEPH JONATHAN COLEMAN**

**TIMOTHY SMITH and**

**ROBERT RIDDLE,**

        Defendants.

---------------------------------------------------------------X

**CARTER, UNITED STATES MAGISTRATE JUDGE:**

INTRODUCTION

     On August 3, 2010, third party petitioner QBE del Istmo, Compañia de Reaseguros, Inc. (the "petitioner" or "QBE"), filed a petition pursuant to 21 U.S.C. § 853(n) and Fed. R. Crim. Proc. 32.2 (the "petition"), seeking a hearing to adjudicate the petitioner's interest in certain escrow accounts which were included in the Preliminary Order of Forfeiture dated June 23, 2010. The government moves to dismiss the petition pursuant to 21 U.S.C. § 853(n) and Rule 32.2(c) of the Federal Rules of Criminal Procedure contending that the petitioner lacks standing

1

to contest the forfeiture. The Honorable John Gleeson referred this matter to me for a Report and Recommendation.

## BACKGROUND

In or about October 2004, the defendants Issac Ovid, Robert Riddle, Aaron Riddle, and Joseph Jonathan Coleman (collectively, the "Defendants") created Jadis Capital, Inc. ("Jadis Capital"), an investment management company incorporated in New York with its principle offices located in New York. Indictment at ¶ 1.[1] All of the defendants maintained high-level positions in the fund, with Issac Ovid, CEO and head trader, having the "sole authority to trade investor funds at Jadis Capital."[2] *Id.* at ¶¶3-7.

<u>The Logos Fund</u>

In or about November 2004, the Defendants created a hedge fund, The Logos Multi-Strategy I, LP (the "Logos LP" or "Logos Fund"). *Id.* at ¶ 1. In or about January 2005, Ovid and others formed Jadis Investments, LLC ("Jadis Investments"), "a Delaware limited liability company, which served as an investment manager for the Logos Fund." Indictment at ¶ 1. At some point between January 2005 and October 2005, Jadis Capital marketed the Logos Fund to numerous investors. *Id.* at ¶ 9. Despite the fact that investments in the Logos Fund were unregistered securities and could only be marketed to accredited investors, Jadis Capital pursued a strategy of collecting investments from friends, families, and fellow church members—many of whom "did not meet the net worth or income thresholds to qualify as accredited investors."[3]

---

[1] The Indictment does not include the defendant Robert Riddle but notes that "others" helped create Jadis Capital. Robert Riddle's name does appear in the Preliminary Order, however. I assume for these purposes that "others" referred to him as well. *See* Preliminary Order at 1.
[2] The Indictment further states that all of the defendants were members of the same church, where each held a position of authority. Indictment at ¶ 8.
[3] The Indictment notes: "In many cases, the Jadis Capital sales staff encouraged potential investors to transfer their retirement savings or take out home equity loans so that they could invest more money." *Id.* at ¶ 10.

*Id.* at ¶ 9–10. According to the Indictment, in soliciting these investments, the Defendants made several fraudulent misrepresentations and material omissions in the Logos Fund's Private Placement Memorandum ("PPM") and other marketing materials, as well as in verbal dealings with investors. *Id.* at ¶ 12.[4] In total, the Defendants collected approximately $9.3 million in investments in the Logos Fund. *Id.* at ¶ 10.

Within weeks of starting to trade, "Ovid incurred more than $2 million in trading losses, depleting almost all of the money in the Logos Fund." *Id.* at ¶ 13. In addition, the Indictment also charges the defendants with misappropriating investor capital from the Logos Fund.[5] *Id.* at ¶ 15. Overall, Jadis Capital and Jadis Investments had operating expenses totaling more than $3.5 million, and Defendants made numerous other disbursements to themselves, their family members and to businesses and charities, which totaled an additional approximately $1.6 million. *Id.* at ¶ 19. "By October 2005, more than eighty percent of the money in the Logos Fund had either been lost trading or otherwise expended by the defendants." *Id.* at ¶ 23.

The Donum Fund

In August 2005, the Defendants created a second hedge fund, The Donum Fund, LP (the "Donum LP" or "Donum Fund"). The Donum Fund is a Delaware limited partnership formed by Donum, LLC, a Delaware limited liability company (as general partner), and the defendant

---

[4] These misrepresentations and material omissions included:

> (1) intentionally excluding Ovid's name from the Logos Fund PPM; (2) falsely implying in the Logos Fund PPM that trading of the Logos Fund would not be done by Ovid, and would be done by others, when it actually was done just by Ovid; (3) misrepresenting in marketing materials the number of traders at Jadis Capital and fabricating their trading performances; and (4) excluding Ovid's performance record entirely, which "was well below the lowest disclosed performance record.

*Id*. at ¶ 12.

[5] The Indictment describes these misappropriations in more detail. They included buying themselves luxury items, paying themselves high salaries, paying off personal debts, and other improper personal expenditures. *Id.* at ¶¶ 15–21.

Aaron Riddle, the initial limited partner. Pet. at ¶ 5. The Donum Fund "was an investment vehicle that was represented to be a hedge fund established to invest in a wide variety of securities and financial instruments." *Id.* Like in the Logos Fund, "Jadis Investments was designated as Donum LP's 'Investment Manager' and was given discretionary investment authority over investing the funds in the capital accounts of the partners in the Donum LP." *Id.* at ¶ 8. "The responsibility for the day-to-day administration of Donum LP was delegated to Donum, LLC." *Id.*

In August 2005, the Defendants and others marketed the Donum Fund to Financial Pacific, a Panamanian investment firm. *Id.* at ¶ 25; Pet. at ¶ 9. Although Financial Pacific was not initially interested, the defendants Timothy Smith and Cory A. Martin "continued to pursue Financial Pacific regarding Jadis Capital's investment strategy."[6] Pet. at ¶ 9. Over the next month, Jadis Capital provided Financial Pacific with information regarding the performance history of Jadis Capital and those trading on its behalf. This information contained the same misrepresentations and omissions found in the Logos Fund marketing materials. *Id.* at ¶ 10. *See id.*; Indictment at ¶ 25. In fact, Defendants marketed the Donum Fund "in the same manner as the Logos Fund, with the exception that the Donum Fund focused on soliciting larger, institutional investors."[7] Indictment at ¶ 1 & ¶ 23.

In advance of a $3 million investment, Financial Pacific went to Jadis Capital's office in New York to conduct due-diligence of the Donum Fund. Pet. at ¶ 11. According to the Indictment, "[d]uring this visit, the defendants . . . staged a fraudulent presentation of Jadis

---

[6] The SEC has a related civil proceeding against the Defendants and other additional people not named in the criminal case: Stephen Cina, Cory A. Martin, Timothy Smith, Jadis Capital, Inc., Jadis Investments, LLC and Logos LP. Pet. at ¶ 4.

[7] "The defendants . . . and others at Jadis Capital marketed the Funds to prospective investors as pooled investment vehicles created for the purpose of trading and investing in a variety of securities and financial instruments, both domestic and foreign, and primarily in publicly traded equity securities." *Id.* at ¶ 2.

4

Capital and Jadis Investments with intent to mislead" Financial Pacific and provided them with false and fraudulent marketing materials. Indictment at ¶¶ 26–27. In October 2005, Financial Pacific's client, QBE,[8] decided to invest $3 million in the Donum Fund and, as a result, acquired a limited partnership interest in Donum LP. Pet. at § ¶ 12. "

The SEC Investigation

In December 2005, Financial Pacific learned that the SEC was investigating Jadis Capital regarding Ovid, the CEO and head trader. Pet. at ¶ 13. In February 2006, Greg Naclerio ("Naclerio"), a lawyer at the firm Ruskin Moscou Faltischeck, P.C. ("RMFPC"), confirmed to Financial Pacific that Donum LP had been immediately liquidated and placed in escrow at the request of the SEC. Pet. at ¶ 13. By the time Naclerio received the funds, the assets in Donum LP had been reduced to $2,565,456.89. Pet. at ¶ 14. In April 2006, Financial Pacific requested that the funds be released to QBE's account pursuant to the terms of the Donum Partnership Agreement ("Partnership Agreement"). Pet. at ¶ 15. Naclerio wrote back, confirming once again that the Donum Fund had been liquidated and that Jadis Investments was out of business. *Id.*

According to the Petition, the SEC informed Financial Pacific that it and QBE were the victims in its investigation of Jadis Capital. Pet. at ¶ 17. The SEC also told them that "the SEC would file suit to seize the funds and place them in receivership pending the SEC's investigation" if QBE "attempted to force Naclerio to turn over the funds pursuant to the Donum Partnership Agreement or filed suit seeking a constructive trust over the funds." *Id.*

---

[8] QBE "is a well recognized reinsurance company operating for twenty-nine years throughout Latin America." Pet. at ¶ 4. "The only limited partners of Donum LP are QBE del Istmo and one or two unnamed investors, who, upon information and belief, invested only $50,000.00 to $100,000.00." Pet. at ¶ 6

Procedural History

"On April 13, 2009, a grand jury returned an indictment against the Defendants, which included various securities fraud charges."[9]  Motion to Dismiss at 7.  In February and March 2010, the Defendants pled guilty to one count of violating 18 U.S.C. § 371.  *Id.* (Dkt. Nos. 46–49. )  As part of their plea agreement, the Defendants agreed to forfeit property "which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 371, and/or as substitute assets."

On June 23, 2010, in accordance with the procedure set forth in Fed. R. Crim. Proc. 32.2(b), the court entered a Preliminary Order of Forfeiture (Dkt. No. 56) (the "Preliminary Order"), directing the forfeiture of:

> (a) all of the Defendants' right, title and interest in $166,075.47, together with all interest accrued thereon, of Logos Multi Strategy Hedge Fund I LP investor funds (the "Logos Funds"), on deposit in State Bank of Long Island attorney escrow management account no. 32337430 held in the name of Ruskin, Moscou, and Faltischeck, PC. ("RMFPC"), which were entrusted to RMFPC by one or more of the Defendants at the request of the United States Securities and Exchange Commission (the "SEC") in or around December 2005; and
> (b) all the Defendants' right, title and interest in $2,565,456.89, together with all interest accrued thereon, of Jadis Capital, Inc. Investor funds (the "Donum Funds") on deposit in Community National Bank of Long Island escrow account no. 22001911 held in the name of RMFPC, which were entrusted to RMFPC by one or more of the Defendants at the request of the SEC in or around March 2006 (together, the "Forfeited Funds").

Preliminary Order at 2.  Pursuant to 21 U.S.C. § 853(n)(1), the Preliminary Order authorizes the United States Attorney General or his designee to seize the Forfeited Funds, to conduct any

---

[9] According to the Petition, "[o]n or about April 14, 2009, the SEC filed a related civil proceeding . . . against the Defendants, [other persons], Jadis Capital, Jadis Investment and Logos LP ("SEC Lawsuit").  Neither Donum, LLC nor Donum LP is a party to the SEC lawsuit."  Pet. at ¶ 26; *see also* Pet. at ¶¶ 27–30.

proper discovery, and to commence any applicable proceeding to comply with statutes governing third party rights, including giving notice of the order. *See* Preliminary Order at ¶ 2. In keeping with the requirements of § 853(n), beginning on August 3, 2010, the government published notice of the criminal forfeiture proceeding for at least thirty consecutive days. (Dkt. No. 97.)

That same day, petitioner commenced this ancillary proceeding by filing a petition seeking to preclude the forfeiture of the $2,565,456.89 identified in the Preliminary Order as the Donum Fund. Pet. at ¶ 48. The government now moves to dismiss the petition in accordance with the procedure set forth in Fed. R. Crim. Proc. 32.2(c)(1)(A). For the reasons stated below, I respectfully recommend that the government's motion be granted.

## DISCUSSION

### A. Standard of Review

After a defendant's guilty plea or other finding of guilt, in order for the government to seek the forfeiture of specific property, "the court must determine whether the government has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32(b)(1)(A).[10] If a third party files a petition asserting an interest in the property to be forfeited, the court must conduct an "ancillary proceeding." Fed. R. Crim. P. 32.2(c)(1). "In the ancillary proceeding, the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." Fed. R. Crim. P. 32.2(c)(1)(A). Since many of the procedures available in this ancillary proceeding are analogous to those in the Federal Rules of

---

[10] In deciding the question whether a forfeiture order must be set aside under Rule 11(f), the Supreme Court has held that "the District Court is not obliged to inquire into the factual basis for a stipulated forfeiture of assets embodied in a plea agreement." *See Libretti v. U.S.*, 516 U.S. 29, 51 (1995) (drawing a distinction between the standards required for a conviction, or guilty plea, and what is required for sentencing). In rejecting another of defendant's arguments in *Libretti*, the Court stated: "Once the Government has secured a stipulation as to forfeitability, third-party claimants can establish their entitlement to return of the assets only by means of the hearing afforded under 21 U.S.C. § 853(n)." *Id.* at 44.

Civil Procedure, courts treat "a motion to dismiss a third party petition in a forfeiture proceeding prior to discovery or a hearing . . . like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)." *Willis Management (Vermont), Ltd. v. U.S.*, 652 F.3d 236, 241 (2d Cir. 2011) (quoting *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2d Cir. 2004)); *see also* Fed. R. Crim. P. 32.2 advisory committee's note to subdivision (c). "Therefore, a petition should not be dismissed if the petitioner has stated 'enough facts to state a claim to relief that is plausible on its face.'" *Willis Management*, 652 F.3d at 241–42 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must "assume that the facts set forth in the petition are true," but is "not required to accept any legal conclusions included in the petition." *Willis Management*, 652 F.3d at 242 (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

B. Title 21 U.S.C. § 853

"Section 853(n) provides the exclusive means by which a third party may lay claim to forfeited assets after the preliminary forfeiture order has been entered." *United States v. Mazza-Alaluf*, No. 07 CV 403 (PKC), 2011 WL 308266, at *3 (S.D.N.Y. Jan. 27, 2011) (quoting *DSI Assocs. LLC v. United States*, 496 F.3d 175, 183 (2d Cir. 2007)). Pursuant to 21 U.S.C. § 853(n)(2), "[a]ny person, other than the defendant, asserting a legal interest in property which has been forfeited to the United States pursuant to this section may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property." Section 853(n)(6)(A) requires the district court to amend a preliminary forfeiture order where a claimant demonstrates by a preponderance of the evidence that the claimant had a legal right, title, or interest in the property that was either: (1) vested in the third party rather than the defendant; or (2) was

superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property.[11]

1. "Legal Interest"

A petitioner is required to have "a legal interest in property" in order to have standing under § 853(n)(2). *United States v. Ribadeneira*, 105 F.3d 833, 835 (2d Cir. 1997). "Whether a claimant has a 'legal interest' is determined by reference to the law of the state giving rise to the property interest asserted. However, as a matter of federal law, only one claiming an interest in the specific property—the *res*—that is the subject of a preliminary forfeiture order has standing to bring a claim." *United States v. Egan*, No. 10 CV 191 (JFK), ---F. Supp. 2d---, 2011 WL 3370392, at *7 (S.D.N.Y. Aug. 2, 2011) (citing *Willis Management*, 652 F.3d at 242) (internal citation omitted); *DSI Assocs.*, 496 F.3d at 184. "Without possessing such an interest 'in' a 'particular, specific asset' that is, or is part of, the forfeited property, [the petitioner] does not meet the statutory requirements for initiating an ancillary proceeding under section 853(n)." *DSI Assocs.*, 496 F.3d at 184 (quoting *Ribadeneira*, 105 F.3d at 835 (2d Cir. 1997)). As such, the Second Circuit has consistently held that general creditors "lack the property interest contemplated by the text of section 853(n)(2)," because general creditors, by definition, do not have a property interest in a particular asset. *See Untied States v. Mazza-Alaluf*, No. 07 CV 403 (PKC), 2011 WL 308266, at *3 (S.D.N.Y. Jan. 27, 2011).

Here, QBE's primary argument is that the remaining assets in the Donum Fund are the property of the limited partners of Donum LP, such as QBE. In support, QBE contends that

---

[11] This provision also requires the court to amend a forfeiture order if the petitioner is a bona fide purchaser for value of the right, title, or interest in the property. 21 U.S.C. § 853(n)(6)(b). QBE does not make this argument, and it is not relevant to this proceeding.

certain provisions of the Partnership Agreement granted it and the other limited partners an ownership interest in Donum LP as a whole. *See* Pet. at ¶¶ 37–44.

Under Delaware law, the law of the state giving rise to the alleged property interest, a limited partner does not have an ownership in the partnership itself. *See Mass. Mutual Life Ins. Co. v. Certain Underwriters of Lloyd's*, No. 4791-VCL, 2010 WL 2929552 (Del. Ch. Jan. 23, 2010). In *Mass. Mutual*, the defendant bond underwriters, who were trying to avoid liability under an insurance contract, contended that the investments in the insured funds, which were limited partnerships (and one off-shore corporation), belonged to the third-party investors—not to the funds themselves. 2010 WL 2929552, at *7. The court disagreed, finding that the "property of a limited partnership belongs to the partnership as an entity, not to its individual partners." *Id.* at *8 (citing 6 Del. C. §§ 15-201(a), 15-203, 15-501 and a Chancery Court case). In that case, the court added, that the defendants' "contention that funds invested in the . . . limited partnerships continued to belong to the third-party investors ignores the separate existence of the limited partnerships as entities." *Id.* The court also noted that "[u]nder the organizational documents of these [limited partnership] entities, the money the investors paid became the property of the [limited partnership]," and observed that "[t]his quite common fund structure has been described in many Delaware decisions." *Id.* (citing six Delaware Chancery Court cases from 1998 to 2010).

Thus, as a limited partner, QBE did not have a property interest in the Donum Fund; the money it invested became the property of the Donum Fund as a separate entity owned and controlled by Jadis Capital. *See id.* QBE claims that, notwithstanding Delaware law, various provisions of the Partnership Agreement gave it an ownership interest in the Donum Fund. However, these provisions, such as the retention of certain rights of withdrawal and liquidation,

are rights that are extremely limited vis-à-vis those of the partnership as a whole and are inconsistent with the rights that belong to property owners. Therefore, I respectfully recommend that the Court find that QBE has not alleged a sufficient legal interest in the forfeited assets to acquire standing under § 853(n).

    2. Constructive Trust

In certain instances, "a constructive trust qualifies as a 'legal interest' for the purposes of § 853(n)(6)(A)." *See Willis Management*, 652 F.3d at 243, 245. District courts look to state law to determine the applicability of a constructive trust in a forfeiture proceeding. *See id.* (applying Vermont law); *Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1158–59 (2d Cir. 1994) (applying New York law). New York law applies in this case because it has the greatest interest in the forfeiture proceeding. *See In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 350 (2d Cir. 1992) (applying the federal common law choice-of-law rule).

"A constructive trust is an equitable remedy available when property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest." *Lester v. Zimmer*, 147 A.D.2d 340, 341 (N.Y. App. Div., 3d Dep't 1989), As a threshold matter, "before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his own property into a product in the hands of the wrongdoer." *United States v. Lesak*, No. 07 CV 0396 (GEL), 2009 WL 1788411, at *5 (S.D.N.Y. June 23, 2009) (citation omitted). "Under New York law, a constructive trust may be imposed where four factors are present: (1) a promise, express or implied; (2) a transfer in reliance on the promise; (3) a fiduciary or confidential relationship; and (4) unjust enrichment." *Id.* (citing *Simonds v. Simonds*, 45 N.Y.2d 233, 242 (1978)). These factors should not be rigidly applied; rather, they serve as "important guideposts" and should be considered "with sufficient flexibility to prevent

11

unjust enrichment in a wide range of circumstances." *In re Koreag*, 961 F.2d at 353 (emphasizing that "the key factor is unjust enrichment"). For instance, the lack of a fiduciary relationship does not automatically defeat a claim of constructive trust. *Id.* (citing *Simonds*, 45 N.Y.2d at 241).

Here, QBE is able to trace its investment to the forfeited assets and alleges all of the factors for a constructive trust: (1) that Defendants made promises to QBE regarding who would be managing the funds invested in Donum LP and how those funds would be invested; (2) that QBE transferred its money to Donum LP's capital account on reliance on the promise; (3) that Defendants had a fiduciary or confidential relationship with QBE; and (4) that failure to impose a constructive trust would unjustly enrich the Defendants. Pet. at ¶ 46.

However, even if QBE meets the factors for a constructive trust, the court must consider other equitable principles when deciding whether to impose a constructive trust under the facts of a particular case. *See generally Counihan v. Allstate Ins. Co.*, 194 F.3d 357, 361 (2d Cir. 1999) ("Equity is the essential component with which a court must concern itself."). For example, a constructive trust is inappropriate when adequate legal remedies exist elsewhere. *See Willis Management*, 652 F.3d at 242 (citing *Ribadeniera*, 105 F.3d at 833). QBE does not dispute that it may seek relief of the forfeited funds through § 853(i)[12]—the provision authorizing the Attorney General to grant mitigation or remission to third-party victims. Significantly, however,

---

[12] 21 U.S.C. § 853(i) provides, in part, that the Attorney General is authorized to

> (1) grant petitions for mitigation or remission of forfeiture, restore forfeited property to victims . . ., or take any other action to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of this section; (2) compromise claims arising under this section; (3) award compensation to persons providing information resulting in a forfeiture under this section; (4) direct the disposition . . . of all property ordered forfeited . . . by public sale . . .; and (5) take appropriate measures necessary to safeguard and maintain property ordered forfeited under this section pending its disposition.

the Second Circuit has held that § 853(i) does not provide a legal remedy that categorically precludes the imposition of a constructive trust when asserted during a § 853(n) forfeiture petition. *See Willis Management*, 652 F.3d at 243.

Additionally, a district court has discretion to deny a constructive trust where it would lead to an inequitable result. *Willis Management*, 652 F.3d at 246 (noting that a constructive trust should not be imposed when it "would unfairly elevate the petitioners' claims over those of multiple 'similarly situated victims'"); *United States v. Dreier*, 09 CV 085 (JSR), 2010 WL 1223087, at *2 (Mar. 24, 2010); (granting government's motion to dismiss where imposing constructive trust would be unfair to the other fraud victims "seeking to recover from the same limited pool of forfeited assets" ); *see also United States v. Andrews*, 530 F.3d 1232, 1238 (10th Cir. 2008) ("We hold that the district court did not abuse its discretion in deciding that the traditional purpose of a constructive trust—avoiding unjust enrichment—would not be served here, because the true parties in opposition to the [petitioners] are the other fraud victims, who would not be unjustly enriched by receiving appropriate shares of [defendant's] remaining loot.").

QBE contends that the imposition of a constructive trust will not result in unfairness to similarly situated investors, and that such investors include the other limited partners of the Donum Fund but not the investors of the Logos Fund. Pet. at ¶ 47. Despite QBE's attempt to portray its investment in the Donum Fund as completely separate from those who invested in the Logos Fund, both groups of investors allegedly fell victim to a singular criminal scheme orchestrated by the Defendants. Even though certain distinctions might exist between QBE and the individual victims of the Logos Fund, these differences do not automatically "support deviation from the basic principle of equal distribution for all victims." *See Dreier*, 2010 WL

1223087, at *2.  In light of the present circumstances, I find that it would be unfair to allow QBE to recover from the limited pool of forfeited assets to the detriment of all the other investors of the Logos and Donum Funds.  Therefore, I respectfully recommend that the Court not impose a constructive trust for the benefit of QBE and that the government's motion to dismiss be granted.[14]

CONCLUSION

For the reasons set forth above, I respectfully recommend that the Court grant the government's motion to dismiss.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 6 and 72 of the Fed. R. Civ. P., the parties shall have fourteen days from this date to file written objections to this Report and Recommendation on ECF.  Extensions of time to file objections should be directed to Judge Gleeson.  Failure to file timely objections will preclude appellate review of any order of judgment that will be entered.

**SO ORDERED**
**Dated: December 6, 2011**
**Brooklyn, New York**

/s/ ALC
_____

**ANDREW L. CARTER, JR.**

**UNITED STATES MAGISTRATE JUDGE**

---

[14] QBE makes a separate argument that it has standing to pursue a third-party claim on behalf of the Donum Fund itself.  *See* QBE's Reply at 16–17.  Since this argument was made for the first time in QBE's reply memorandum, I decline to consider it here.  *See Johnson & Johnson v. Guidant Corp.*, 525 F. Supp.2d 336, 359 (S.D.N.Y. 2007) (arguments first raised in reply memoranda are not properly considered).  If QBE seeks to amend its petition, this request must be made to the District Court.  Furthermore, to the extent that QBE seeks to acquire standing by bringing a claim directly against Donum LP for violations of the Partnership Agreement or under corporate law, I find its arguments to be without merit and, in any event, not applicable to the present ancillary proceeding under § 853(n).